## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **FO2GO LLC,** | CIVIL ACTION NO. 1:18-cv-807-RGA |
| Plaintiff, | |
| v. | **PATENT CASE** |
| **KEEPITSAFE, INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff FO2GO LLC files this First Amended Complaint for Patent Infringement against KeepItSafe, Inc., and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff FO2GO LLC ("FO2GO" or "Plaintiff") is a Delaware limited liability company with a place of business at 122 Delaware Street, New Castle, Delaware 19720. Andrew Knowles, the inventor on United States Patent No. 9,935,998, is the managing member of FO2GO.

2.      On information and belief, Defendant KeepItSafe, Inc. ("KeepItSafe"), is a Delaware corporation with a place of business at 6922 Hollywood Boulevard, Suite 500, Los Angeles, CA 90028.  KeepItSafe's parent company, j2 Global, Inc., was the original party to this lawsuit.  Counsel for j2 Global, Inc. stated that KeepItSafe is the proper entity to sue for the allegations in this complaint.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Delaware Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein.   Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because it is a Delaware corporation.

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.   In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Delaware.   Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Delaware.   Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Delaware.   Defendant has committed such purposeful acts and/or transactions in Delaware such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant is incorporated in Delaware.   On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.      For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.   COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,935,998)

8.      Plaintiff incorporates the above paragraphs herein by reference.

2

9.      On April 3, 2018, United States Patent No. 9,935,998 ("the '998 Patent") was duly and legally issued by the United States Patent and Trademark Office.  Andrew Knowles is the inventor of the inventions claimed in the '998 patent.  The '998 Patent is titled "Digital Message Processing System."  The inventor identified on the '998 Patent is Andrew Knowles.  A true and correct copy of the '998 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     FO2GO is the assignee of all right, title and interest in the '998 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '998 Patent.  Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '998 Patent by Defendant.

11.     The invention in the '998 Patent relates to digital cameras that "include a radio frequency (RF) transceiver for transmitting digital photos to a remote destination according to users preferences."  (Ex. A at col. 1:16-19).  At the time of the invention, digital cameras were becoming increasingly popular because the photos did not require processing and an image could be downloaded for viewing on a computer or, after being stored on a computer, the image could be forwarded by e-mail or incorporated into other electronic documents, such as web pages.  (Ex. A at col. 1:23-35).  The inventor realized that there were several problems with currently available digital camera systems.

12.     Downloading the images from a digital camera was complicated, which usually required physically connecting the digital camera to a computer, removing memory from the camera to insert into a computer, or providing an infrared port for the computer and camera.  (*Id.* at col. 1:36-45).  These methods of transferring the digital images detracted from being able to

easily and quickly share the photos. (*Id.* at col. 1:46-54). Another issue with these methods is they required a database of images on a local computer, which had limited accessibility. (*Id.* at col. 1:55-58). The inventor realized that there was value to using RF communications to transmit images from a digital camera to a networked image storage and archival system. (*Id.* at col. 1:59 – col. 2:2). Another problem that the inventor foresaw was the cost and time to wirelessly transmit images to multiple recipients. (*Id.* at col. 2:9-18). Wireless data transmission was not as fast as wired transmission and the cost of wireless data transmission was based on the amount of data sent. The inventor realized that this problem could be solved by allowing a user to forward an image file with distribution instructions using recipient codes to a central repository that would save the image and automatically distribute the image according to the user's instructions. (*Id.* at col. 2:18-24). By forwarding an image once to a central repository with distribution instructions using recipient codes, the cost and time to distribute the images are reduced compared to the prior art method of wirelessly transmitting images to multiple recipients using individual messages from a single wireless device. (*Id.* at col. 2:9-24).

13.     The '998 Patent or its patent family have been cited as prior art during the prosecution history of subsequently-issued United States patents, including patents assigned to Blackberry, Fujitsu Limited, Canon Kabushiki Kaisha, Honeywell International, Palm, Inc., Ricoh Company, Ltd, Fotomedia Technologies, LLC, Photobucket Corporation, Eastman Kodak Company, and Sanyo Electric Co., Ltd.

14.     **Direct Infringement.** Upon information and belief, Defendant has been and now are directly infringing at least claims 2, 4, and 5 of the '998 patent in Delaware, and elsewhere in the United States, by actions comprising at least making, using, selling, and/or offering for sale the SugarSync system in connection with a digital camera apparatus that embody the patented

4

invention. SugarSync includes a digital photo processing system comprising a wireless digital camera apparatus having a processor, memory, a destination address and a previously defined recipient code stored in memory, a user interface of the digital camera apparatus for displaying previously defined recipient codes, and receiving signals indicating a user selection of a displayed recipient code, a digital camera connected to the processor for capturing digital images in response to signals from the user interface, and a radio frequency (RF) communications device connected to the processor.  The processor is responsive to the signals from the user interface to transmit a message including a previously defined recipient code and a digital image to the destination address via the RF communications device.  SugarSync also comprises a server associated with the destination address and responsive to messages received at the destination address from the wireless digital camera apparatus, a database storing account configuration data including recipient code data, and a server communications device.  The server is configured to parse the previously defined recipient codes from the message, retrieve from the database account configuration data that is associated with the previously defined recipient codes, and processes the message according to the account configuration data.  (*E.g.*, https://www.sugarsync.com/tour/file-sharing.html; https://support.sugarsync.com/hc/en-us/articles/204730144-Manage-Shared-Files-and-Folders-Android; https://play.google.com/store/apps/details?id=com.sharpcast.sugarsync; https://searchstorage.techtarget.com/definition/SugarSync).

15.    SugarSync's server is also configured to distribute the message to recipient addresses associated with the previously defined recipient codes included in the account configuration data.  (*Id.*).

16.     Furthermore, the message sent by SugarSync comprises an account identifier, the database configuration data includes an account identifier, and the server is configured to retrieve from the account configuration data, data that is associated with both the account identifier and the one or more previously defined recipient codes.  (*Id.*).

17.     Defendant provides and implements the infringing service using the SugarSync app which is a "digital content synchronization service that allows you to synchronize your digital content ('Files') across your PCs and devices and to store and access them through the Internet." (https://www2.sugarsync.com/terms).   The SugarSync service requires the users to give Defendant "permission to sync and store your Files" including "a license: (i) to use, copy, transmit, distribute, store and cache Files that you choose to sync and/or store; and (ii) to copy, transmit, publish, and distribute to others the Files as you designate, whether through the sharing or public linking features of the Service, in each case solely to provide the Service to you." (*Id.*). Defendant is therefore providing, implementing, and controlling the SugarSync service that incorporates the SugarSync app and the mobile device on which the app is installed, with the SugarSync app providing access to the service.  (*Id.*).

18.     On information and belief, Defendant provides or otherwise pays for camera phones/tablets supplied to its employees on which the SugarSync app is installed, which are used to infringe one or more claims of the '998 patent as described above.

19.     **Indirect Infringement.**   Upon information and belief, Defendant has been and now are indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 2 of the '998 patent in the State of Delaware, in this District, and elsewhere in the United States, by providing the SugarSync app and its associated server(s) and database(s) for use as described above by Defendant's customers.  Defendant advertised, offered

6

for sale, and/or sold the SugarSync app and systems to its customers for use on wireless camera devices in a manner that Defendant knew infringed at least one claim of the '998 patent. Defendant is a direct and indirect infringer, and its customers using the accused instrumentalities are direct infringers. Upon information and belief, Defendant had actual knowledge of the '998 patent at least as early as when its parent company j2 Global, Inc. was served with the original Complaint in this action, and has known of its infringement since at least that date as a result of the accusations of infringement in the Complaint. Defendant has therefore also known that the use and implementation of the SugarSync accused instrumentalities by its customers infringed at least one claim of the '998 patent since at least the date the original Complaint in this action was served.

20.    Upon information and belief, the SugarSync accused instrumentality is a system with which photos taken on a wireless camera device can be viewed, shared, and uploaded wirelessly to a server for organization, storage, and distribution using a database. Defendant instructs its customers to download and use the SugarSync system on a wireless camera device. The wireless camera device used by the SugarSync app has a camera, processor, memory, as well as a SugarSync app that includes a destination address of Defendant's servers and one or more previously defined recipient codes stored in memory, such as other people stored by the user in the SugarSync app, which can be created and selected by Defendant's customers. The SugarSync app stores usernames or user IDs for the user's contacts. The SugarSync accused instrumentality has a user interface connected to the processor of the wireless camera device that displays recipient codes, such as contacts of the user, and allows the user to assign one or more recipient codes for a particular photo. The SugarSync app allows taking a photo and addressing the photo directly to a group, folder, or individual. The mobile device, via the SugarSync

7

application, includes a user interface connected to the processor for displaying one or more recipient codes and receiving signals indicating user selection of a displayed recipient code. The SugarSync accused instrumentality allows for photos and the distribution information for photos to be wirelessly transmitted via RF communications to the servers used by the SugarSync system.

21.    The SugarSync system servers receive the messages from the wireless camera device. The SugarSync system also has a database that stores the account configuration data for SugarSync users, including profile information and information regarding user names and user IDs. The SugarSync system servers parse the recipient code from the message sent by the wireless camera device, so that photos are distributed to and/or made available to the users identified by the SugarSync users. Defendant provides instructions to its customers for using the SugarSync accused instrumentality in this infringing manner.

22.    On information and belief, since becoming aware of the '998 patent and of the infringement through the making, using, selling, and/or offering for sale the accused instrumentality for use by its customers, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the SugarSync accused instrumentalities to its customers and by aiding and abetting its use in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the SugarSync accused instrumentality, Defendant knew that the use of the SugarSync accused instrumentality by its customers constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the SugarSync accused instrumentality to infringe as described above, and provided instructions for using the SugarSync accused instrumentality to infringe, including advertising descriptions of the features, providing

help pages, blogs, and/or user's guides. Such instructions include those available through the SugarSync app and Defendant's website including at https://www.sugarsync.com/tour/file-sharing.html; https://support.sugarsync.com/hc/en-us/articles/204730144-Manage-Shared-Files-and-Folders-Android; https://play.google.com/store/apps/details?id=com.sharpcast.sugarsync; https://searchstorage.techtarget.com/definition/SugarSync.    Defendant also advertised the directly infringing use by customers on its website and the online app stores at which the SugarSync app could be downloaded despite Defendant knowing that such use infringes at least one claim of the '998 patent. Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '998 patent by its customers.

23.    On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified SugarSync accused instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '998 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the SugarSync accused instrumentality by Defendant's customers yet continued to provide the SugarSync accused instrumentality to its customers knowing that it is a material part of the invention. As described above, since learning of the infringement, Defendant knew that the use and implementation of the SugarSync accused instrumentality by its customers was made and adapted for infringement of the '998 patent. A new act of direct infringement occurred each time a customer downloaded,

implemented, and/or used the SugarSync accused instrumentality. After Defendant became aware that the use of the SugarSync accused instrumentality infringes at least one claim of the '998 patent, Defendant knew that each such new use was made and adapted for infringement of at least one claim of the '998 patent and Defendant continued to advertise and provide the SugarSync accused instrumentality for such infringing activities. Furthermore, as described more fully above, the SugarSync accused instrumentality is a system designed for photos taken on a wireless camera device to be viewed, upload, and shared wirelessly to a server for organization, storage, and distribution using a database, and is therefore not a staple article or commodity of commerce suitable for substantially noninfringing use.

24. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '998 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

25. On information and belief, Defendant will continue its infringement of one or more claims of the '998 patent unless enjoined by the Court. Each and all of the Defendant's infringing conduct thus causes Plaintiff irreparable harm and will continue to cause such harm without the issuance of an injunction.

26. On information and belief, Defendant has had at least constructive notice of the '998 patent by operation of law, and there are no marking requirements that have not been complied with.

**VI.  <u>JURY DEMAND</u>**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.   Judgment that one or more claims of United States Patent No. 9,935,998 has been infringed, either literally and/or under the doctrine of equivalents, and either directly and/or indirectly, by Defendant;

b.   Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

c.   That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.   That Defendant be permanently enjoined from any further activity or conduct that infringes one or more claims of United States Patent No. 9,935,998; and

e.   That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  August 2, 2018

OF COUNSEL:

David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

 /s/ Stamatios Stamoulis
Stamatios Stamoulis
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com

*Attorneys for Plaintiff FO2GO LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2018, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

*/s/Stamatios Stamoulis*
Stamatios Stamoulis (#4606)